# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### September 22, 2004 Session

## STATE OF TENNESSEE v. DEMETRIE OWENS

**Appeal from the Circuit Court for Marshall County**
**No. 15306    Charles Lee, Judge**

---

**No. M2003-01454-CCA-R3-CD - Filed December 3, 2004**

---

The appellant, Demetrie Owens, was found guilty by a jury on two counts of theft of property valued between $1,000 and $10,000 and one count of possession of contraband in a penal institution. The jury found the appellant not guilty of possession of cocaine with the intent to sell. At the sentencing hearing, the trial court merged the two theft convictions and sentenced the appellant to three years and four months on the theft and four years and eight months on the drug offense. The trial court ordered the sentences to run consecutively. On appeal, the appellant challenges the sufficiency of the evidence, the jury instructions on the charge of possession of contraband in a penal institution, and his sentence. Because the appellant failed to include his challenge to the jury instructions in a motion for new trial, that issue is waived. As to the remaining issues, we determine that the evidence was sufficient to sustain the convictions and that the trial court properly sentenced the appellant.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Trial Court is Affirmed.**

JERRY L. SMITH, J., delivered the opinion of the court, in which DAVID G. HAYES and THOMAS T. WOODALL, JJ., joined.

Merrilyn Feirman, Nashville, Tennessee and Andrew Jackson Fearing, III, Shelbyville, Tennessee, for the appellant, Demetrie Owens.

Paul G. Summers, Attorney General & Reporter; Jennifer L. Bledsoe, Assistant Attorney General; Mike McCowen, District Attorney General; and Weakley E. Barnard, Assistant District Attorney General,  for the appellee, State of Tennessee.

**OPINION**

Factual Background

On October 5, 2002, Danny Carrico, the owner of a wrecker service in Lewisburg, Tennessee, planned to take one of his wreckers to nearby Fayetteville for service. Mr. Carrico attempted to get one of his employees, Billy, to follow him to Fayetteville. Mr. Carrico had a 1991 Mazda 626 that he wanted Billy to drive to Fayetteville behind the wrecker. Mr. Carrico could not locate Billy, so he asked the appellant, whom he met through Billy, to follow him to Fayetteville. Mr. Carrico even offered to pay the appellant for the trip. The appellant told Mr. Carrico that he had a driver's license and the appellant agreed to follow Mr. Carrico in the Mazda. The trip to Fayetteville was uneventful. Mr. Carrico dropped the wrecker off, and he and the appellant then drove back to Lewisburg. Mr. Carrico drove his car back to Lewisburg.

During the drive back, the appellant asked Mr. Carrico on two separate occasions if he could borrow the Mazda. Mr. Carrico replied, "No." After they arrived back in Lewisburg, Mr. Carrico dropped the appellant off at a residence on Fourth Street. The appellant again asked if he could borrow the car, and Mr. Carrico refused for a third time. The appellant told Mr. Carrico that he wanted to borrow the car to visit a friend in Columbia.

Later that same day, Mr. Carrico and Billy went to Cornersville to cash a check. When they returned to Lewisburg, Mr. Carrico dropped off Billy at the same residence on Fourth Street where he had dropped the appellant earlier. Mr. Carrico paid the appellant $40.00 for making the trip to Fayetteville.

That evening, Mr. Carrico drove to his residence on West Commerce Street and backed his car into the driveway. He left the doors to the car unlocked and left the keys in the console. At around midnight, Mr. Carrico stepped outside to retrieve a bag of dog food from the car. The next morning, October 6, between 6:00 and 7:30 a.m., when Mr. Carrico went out to get into the car, it was gone.

Mr. Carrico immediately notified the Lewisburg Police Department. Officer Darryl Birdsong arrived within five minutes. Mr. Carrico suspected that the appellant, also known as "Me-me," had taken the car. Officer Birdsong returned to the police department after taking the report from Mr. Carrico and entered the information about the stolen vehicle into the computer. Officer Birdsong learned later that day that the car had been recovered in Columbia, Tennessee. Mr. Carrico took out a warrant against the appellant charging him with theft of the vehicle, which was valued at approximately $1,700. Officer Birdsong attempted to serve the warrant on the appellant, but was unsuccessful.

During the early morning hours of October 6, Officer Jeremy Haywood was on duty for the Columbia Police Department in Maury County, Tennessee. He initiated a traffic stop of a Mazda

626 on James Campbell Boulevard for speeding. The car was headed in the direction of Lewisburg at the time of the stop, but was still approximately 20 miles away from Lewisburg. The appellant was the driver of the Mazda and did not have a driver's license or any type of identification. Officer Haywood ran a check of the appellant's name and date of birth and discovered that the appellant had a suspended license for failure to pay a citation. Officer Haywood arrested the appellant and had the car towed. Officer Haywood did not learn until after the appellant was released that the vehicle had been stolen in Lewisburg.

At around 11:00 p.m. on October 6, Officer Steve Mitchell of the Lewisburg Police Department was on routine patrol when he saw the appellant riding in the back seat of a car on Fifth Avenue. Officer Mitchell stopped the car and arrested the appellant on the outstanding warrant. There were two other individuals in the car. Officer Mitchell called for back-up, and Officer Rebecca Lambert arrived on the scene to assist him in the stop. Officer Mitchell initiated a search of the vehicle in which he found several rocks of an off-white substance, which later tested positive for cocaine. The cocaine was located underneath the driver and passenger seats, but was only visible from the back seat. There was about $500 on the appellant's person at the time of the arrest. Neither the driver nor the other passenger had any money on their person at the time of the stop.

Officer Lambert was responsible for transporting the appellant to the Marshall County Jail after his arrest. Officer Lambert asked the appellant if he had any "substance" on him, and the appellant said, "No." Prior to entering the jail, Officer Lambert told the appellant again, "[i]f you have anything on you, you need to give it to me now because if I take you into the jail, I'm going to charge you with entering of contraband into a penal institution." Once at the jail, Officer Lambert escorted the appellant into the booking area and unhandcuffed him. Corrections Officer Jeff Hensen began to search the appellant, who had both of his hands on the booking counter "balled up in a fist." The appellant was asked several times to open his hands. Each time, the appellant refused. Officer Lambert and Officer Hensen then grabbed each side of the appellant's hands and pulled them apart. Two plastic bags containing rocks of a white substance fell from the appellant's left hand onto the counter. Officer Lambert confiscated the bags and took them into the office. The substance later tested positive for cocaine and weighed 3.3 grams.

On October 7, 2002, Mr. Carrico was notified that his car had been impounded in Maury County, Tennessee. Mr. Carrico had to pay between $130 and $160 to retrieve his car.

The appellant was indicted by the Marshall County Grand Jury on two counts of theft of property valued between $1,000 and $10,000, possession of more than .5 grams of cocaine with intent to sell and possession of contraband in a penal institution.

After a jury trial, the appellant was found guilty of the two counts of theft of property and of possession of contraband in a penal institution. The jury found the appellant not guilty of possession of cocaine. At sentencing, the trial court merged the two theft convictions. The appellant was sentenced to three (3) years and four (4) months for the theft conviction and four (4) years eight (8) months for the drug offense. The trial court ordered the sentences to run consecutively.

The appellant filed a timely notice of appeal challenging the sufficiency of the evidence, the jury instructions on the charge of possession of contraband in a penal institution and his sentence as excessive.

## Waiver

Initially we note that the appellant raised only the following issues in his motion for new trial: (1) the evidence was insufficient to sustain a conviction for theft of property over $1,000 and possession of contraband in a penal institution; (2) the proof at trial was circumstantial and there was no "web of proof woven around the appellant sufficient to exclude beyond a reasonable doubt all other possibilities save that the . . . [appellant] committed these acts;" and (3) the sentence as excessive. On appeal, the appellant challenges the trial court's jury instruction on the charge of introduction of contraband into a penal institution. Because the appellant did not challenge the jury instructions in a motion for new trial, any issue regarding jury instructions has been waived. See Tenn. R. App. P. 3(e); see also State v. Martin, 940 S.W.2d 567, 569 (Tenn. 1997) (holding that a defendant relinquishes the right to argue on appeal any issues that should have been presented in a motion for new trial).

## Sufficiency of the Evidence

When a defendant challenges the sufficiency of the evidence, this Court is obliged to review that claim according to certain well-settled principles. A verdict of guilty, rendered by a jury and "approved by the trial judge, accredits the testimony of the" State's witnesses and resolves all conflicts in the testimony in favor of the State. State v. Cazes, 875 S.W.2d 253, 259 (Tenn. 1994); State v. Harris, 839 S.W.2d 54, 75 (Tenn. 1992). Thus, although the accused is originally cloaked with a presumption of innocence, the jury verdict of guilty removes this presumption "and replaces it with one of guilt." State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982). Hence, on appeal, the burden of proof rests with the defendant to demonstrate the insufficiency of the convicting evidence. Id. The relevant question the reviewing court must answer is whether any rational trier of fact could have found the accused guilty of every element of the offense beyond a reasonable doubt. See Tenn. R. App. P. 13(e); Harris, 839 S .W.2d at 75. In making this decision, we are to accord the State "the strongest legitimate view of the evidence as well as all reasonable and legitimate inferences that may be drawn therefrom." See Tuggle, 639 S.W.2d at 914. As such, this Court is precluded from re-weighing or reconsidering the evidence when evaluating the convicting proof. State v. Morgan, 929 S.W.2d 380, 383 (Tenn. Crim. App. 1996); State v. Matthews, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990). Moreover, we may not substitute our own "inferences for those drawn by the trier of fact from circumstantial evidence." Matthews, 805 S.W.2d at 779.

In the case herein, the appellant was charged with two counts of theft of property valued at more than $1,000 but less than $10,000, possession of more than .5 grams of cocaine with the intent to sell, and possession of contraband in a penal institution. The jury found the appellant guilty on the two counts of theft and on the possession of contraband in a penal institution. On appeal, the appellant challenges the sufficiency of the evidence. Specifically, he contends that there was

insufficient proof both that he "unlawfully intended" to introduce contraband into the penal institution and that he "intended to deprive the owner of his car." The appellant contends that the jury should have found him guilty of joyriding rather than theft. The State argues that the testimony at trial was sufficient beyond a reasonable doubt to support the convictions.

In order to convict the appellant of theft of property, the State was required to prove that the appellant violated Tennessee Code Annotated section 39-14-103, which states, "[a] person commits theft of property if, with intent to deprive the owner of property, the person knowingly obtains or exercises control over the property without the owner's effective consent." Tenn. Code Ann. § 39-14-103. To deprive is to:

(A) Withhold property from the owner permanently or for such a period of time as to substantially diminish the value or enjoyment of the property to the owner;
(B) Withhold property or cause it to be withheld for the purpose of restoring it only upon payment of a reward or other compensation; or
(C) Dispose of property or use it or transfer any interest in it under circumstances that make its restoration unlikely.

Tenn. Code Ann. § 39-11-106(a)(8).

The proof introduced at trial showed that Mr. Carrico owned a 1991 Mazda 626 worth approximately $1,700. The appellant asked Mr. Carrico three times if he could borrow the car and all three times Mr. Carrico refused. On the night of October 5, 2002, Mr. Carrico backed his car into the driveway at his residence. He left the keys in the car and the doors unlocked. The next morning, the car was missing. Mr. Carrico notified the police immediately.

The appellant was stopped for speeding by Officer Haywood of the Columbia Police Department while driving Mr. Carrico's Mazda in the early morning hours of October 6, 2002. The car was headed in the direction of Marshall County but was approximately 20 minutes away from Lewisburg at the time of the stop. The appellant was arrested for driving with a suspended license and the car was towed. Officer Haywood did not know at that time that the car was reported stolen in Lewisburg.

After the appellant was released from custody in Maury County, Officer Birdsong learned that the Mazda was impounded there. He notified Mr. Carrico of the car's whereabouts. At that time, Mr. Carrico obtained a warrant on the appellant. Mr. Carrico had to travel to Columbia to pick up the car from impound at a wrecker service. Mr. Carrico spent between $130 and $160 to retrieve the car. The appellant was arrested on October 6, 2002, in Lewisburg.

On appeal, the appellant challenges the sufficiency of the circumstantial evidence of theft of property, specifically regarding his intent to deprive Mr. Carrico of his car. Although the appellant's intent to deprive was not directly proven, an intent to deprive an owner of property can be established by circumstantial evidence. State v. Scates, 524 S.W.2d 929, 931 (Tenn. 1975). Further,

it is well established that a "jury may infer a criminal defendant's intent from the surrounding facts and circumstances." State v. Roberts, 943 S.W.2d 403, 410 (Tenn. Crim. App. 1996). The appellant contends that although he was driving the car, he should have only been convicted of the lesser-included offense of unauthorized use of automobiles, commonly referred to as joyriding, because the proof did not show that he had an intent to deprive Mr. Carrico of the car.

Tennessee Code Annotated section 39-14-106, which defines joyriding, states:

[a] person commits a Class A Misdemeanor who takes another's automobile, airplane, motorcycle, bicycle, boat or other vehicle without the consent of the owner and the person does not have the intent to deprive the owner thereof.

Tenn. Code Ann. § 39-14-106.

The definition of "deprive" is found in Tennessee Code Annotated section 39-11-106(8)(a), and includes "[w]ithhold[ing] property from the owner permanently or for such as period of time as to substantially diminish the value or enjoyment of the property to the owner." The record indicates that the jury heard testimony which implied a criminal intent on the part of the appellant. The appellant was told not once, not twice, but three times, that he could not borrow Mr. Carrico's car. Further, the trial judge instructed the jury on the lesser-included offense of joyriding, but the jury concluded that appellant was guilty of theft of property over $1,000. Based upon our review of the record presented on appeal, we conclude that the evidence is sufficient to support the conviction for theft of property over $1,000.

Next, the appellant contends that the evidence was insufficient to support his conviction for "introduction of contraband into a penal institution" because he was under arrest at the time and involuntarily taken to the jail. Therefore, he asserts that the evidence as insufficient to show that he acted with "unlawful intent." The State argues that the appellant was convicted of possession of contraband while present on a penal institution rather than introduction of contraband into a penal institution so there was no requirement of "unlawful intent" and that the evidence is sufficient to sustain the conviction.

Tennessee Code Annotated section 39-16-201 makes it unlawful for any person to:

(1) [k]nowingly and with unlawful intent take, send or otherwise cause to be taken into any penal institution where prisoners are quartered or under custodial supervision any weapons, ammunition, explosives, intoxicants, legend drugs, or any controlled substances found in chapter 17, part 4 of this title.
(2) Knowingly possess any of the materials prohibited in subdivision (a)(1) while present in any penal institution where prisoners are quartered or under custodial supervision without the express consent of the chief administrator of the institution.

-6-

The appellant was convicted of possession of contraband in a penal institution under Tennessee Code Annotated section 39-16-201(a)(2) which does not require an "unlawful intent." The evidence introduced at trial, viewed in a light most favorable to the State, shows that Officer Lambert transported the appellant to the Marshall County Jail after his arrest. Prior to entering the jail, Officer Lambert asked the appellant if he had any "substance" on him, and the appellant said, "No." She informed the appellant that she would charge him with entering contraband into a penal institution if he did not tell the truth. While booking the appellant, Officer Hensen and Officer Lambert recovered two bags containing 3.3 grams of cocaine in the appellant's "balled up" fists. Based on the testimony of the officers, we determine that there was ample evidence for the jury to conclude that the appellant knowingly possessed contraband in a penal institution as required by the statute. Moreover, see State v. Randy B. Long, No. W2001-01467-CCA-R3-CD, 2002 WL 1592716, at *6 (Tenn. Crim. App. at Jackson, July 12, 2002), perm. to appeal denied (Tenn. Sept. 19, 2002 ) (determining that voluntary entrance into a penal institution is not a requirement of the offense of introduction of contraband into a penal institution).

## Sentencing

The appellant also argues that the sentence imposed by the trial court was excessive and that he should have received some type of alternative sentence in lieu of incarceration. Specifically, he argues that the trial court did not give enough weight to each mitigating factor and gave too much weight to the appellant's prior record in enhancing his sentence. Further, the appellant argues that the trial court erred in ordering the sentences to be served consecutively. Finally, in a supplemental brief filed with the permission of this Court, the appellant argues that Blakely v. Washington, 542 U.S. ___, 124 S. Ct. 2531 (2004), renders his consecutive sentences illegal. Specifically, he contends that consecutive sentences were inappropriate in light of Blakely because a jury, not a judge, must find the underlying factors necessary to determine whether sentences should be served consecutively. The State argues that the trial court correctly sentenced the appellant and that the appellant waived the Blakely issue for failure to raise it in a timely fashion or, in the alternative, that Blakely does not apply to consecutive sentencing.

The Tennessee Supreme Court recently determined that Blakely does not apply to the decision to impose consecutive sentences. See State v. Robinson, No. W2001-01299-SC-R11-DD, ___ S.W.3d ___, 2004 WL 2158117, at *25 n.14 (Tenn. Sept. 28, 2004) (citing People v. Sykes, 120 Cal. App. 4th 1331, 16 Cal. Rptr. 3d 317, 327 (2 Dist. 2004)) (dismissing defendant's challenge to consecutive sentences relying on Blakely and acknowledging that several courts have "rejected the defendant's contention and held that Blakely and Apprendi do not apply to the decision to impose consecutive sentences"). This argument is without merit.

Looking to the appellant's remaining challenges to his sentence, this Court is instructed to "conduct a de novo review on the record of such issues. Such review shall be conducted with a presumption that the determinations made by the court from which the appeal is taken are correct." Tenn. Code Ann. § 40-35-401(d). "However, the presumption of correctness which accompanies the trial court's action is conditioned upon the affirmative showing in the record that the trial court

considered the sentencing principles and all relevant facts and circumstances." State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991). In conducting our review, we must consider the defendant's potential for rehabilitation, the trial and sentencing hearing evidence, the pre-sentence report, the sentencing principles, sentencing alternative arguments, the nature and character of the offense, the enhancing and mitigating factors, and the defendant's statements. Tenn. Code Ann. §§ 40-35-103(5), -210(b); Ashby, 823 S.W.2d at 169. We are to also recognize that the defendant bears "the burden of demonstrating that the sentence is improper." Ashby, 823 S.W.2d at 169.

Turning more specifically to the facts of this case, the appellant was convicted of theft of property over $1,000 and possession of contraband in a penal institution. Theft of property is a Class D felony, so the range of punishment is two (2) to four (4) years. Tenn. Code Ann. § 40-35-112(a)(4). Possession of contraband in a penal institution is a Class C Felony, so the range of punishment is three (3) to six (6) years. Tenn. Code Ann. § 40-35-112(a)(3).

The trial court sentenced the appellant to three (3) years and four (4) months on the theft offense and four (4) years and eight (8) months on the drug offense and ordered the sentences to be served consecutively for a total effective sentence of eight (8) years.

In imposing the appellant's sentence, the trial court determined that the appellant was not a favorable candidate for an alternative sentence and that several mitigating and enhancing factors applied. The trial court determined that the appellant's sentence should be mitigated on his theft offense because his conduct neither caused nor threatened serious bodily harm although the trial court decided to give this mitigating factor little weight. See Tenn. Code Ann. § 40-35-113(1). The trial court enhanced the appellant's sentence based on his extensive prior record. Tenn. Code Ann. § 40-35-114(2).

The trial court explained its ruling as follows:

> The defendant is a Range I standard offender, and that is not at issue here .
> . . .
>
> This Court has commented on various other occasions where the mitigating factor that the defendant's conduct neither caused nor threatened serious bodily injury should be applied to offenses that are inherently non-violent. . . . So if that mitigating factor applies, it does not carry much, if any, weight with the Court. So out of an abundance of caution, the Court will find that if it applies, then the Court gives it little weight.
>
> . . . .
>
> The Court finds that the defendant does have a history of criminal convictions or criminal behavior, in addition to those necessary to establish the appropriate range. The Court places significant weight upon the fact that the defendant has been

-8-

convicted of a felony, of the same type of felony, for which the defendant now stands before this Court.

The Court also places significant fact that the defendant has several other convictions involving the possession of drugs. . . .

The Court finds that the defendant has a history of failure to abide by conditions of release into the community. . . .

. . . .

For those reasons, the Court will set the defendant's sentence at three years and four months on the theft case, giving greater weight to the enhancing factor that the defendant has a history of criminal conviction or criminal behavior since he has a similar theft charge; and to four years and eight months on the introduction of contraband into the county facility.

Ordinarily, in balancing these concerns, a trial court should start at the presumptive sentence, enhance the sentence within the range for existing enhancement factors, and then reduce the sentence within the range for existing mitigating factors. Tenn. Code Ann. § 40-35-210(e). No particular weight for each factor is prescribed by the statute. See State v. Santiago, 914 S.W.2d 116, 125 (Tenn. Crim. App. 1995). The weight given to each factor is left to the discretion of the trial court as long as it comports with the sentencing principles and purposes of our code and as long as its findings are supported by the record. Id. The United States Supreme Court's recent opinion in Blakely, however, has called into question the continuing validity of our current sentencing scheme. In that case, the Court, applying the rule in Apprendi v. New Jersey, 566 U.S. 466, 490 (2000), struck down a provision of the Washington sentencing guidelines that permitted a trial judge to impose an "exceptional sentence" upon the finding of certain statutorily enumerated enhancement factors. Blakely, 542 U.S. ___, 124 S. Ct. at 2537-38. The Court observed that "the 'statutory maximum' for Apprendi purposes is the maximum sentence a judge may impose solely on the basis of the facts reflected in the jury verdict or admitted by the defendant." Id. at 2536 (emphasis in original). Finally, the Court concluded that "every defendant has the right to insist that the prosecutor prove to a jury all facts legally essential to the punishment." Id. at 2543 (emphasis in original).

Despite Blakely, it does not appear that the application of enhancement factor (2) would violate the rule established in Apprendi because factor (2) is based upon prior criminal convictions. Further, the appellant herein did not raise a Blakely claim regarding the trial court's application of enhancement factor (2) in conjunction with his Blakely claim on consecutive sentencing. Finally, the authority of trial judges to apply mitigating factors has not been called into question. Therefore, we determine that the trial court properly set the length of the appellant's sentences at three (3) years and four (4) months incarceration for the theft offense and four (4) years and eight (8) months for the drug offense.

The appellant further claims that the trial court erred by failing to grant some type of alternative sentence. In regards to alternative sentencing, Tennessee Code Annotated section 40- 35-102(5) provides as follows:

> In recognition that state prison capacities and the funds to build and maintain them are limited, convicted felons committing the most severe offenses, possessing criminal histories evincing a clear disregard for the laws and morals of society, and evincing failure of past efforts at rehabilitation shall be given first priority regarding sentencing involving incarceration.

A defendant who does not fall within this class of offenders "and who is an especially mitigated offender or standard offender convicted of a Class C, D, or E felony is presumed to be a favorable candidate for alternative sentencing in the absence of evidence to the contrary." Tenn. Code Ann. § 40-35-102(6). Furthermore, unless sufficient evidence rebuts the presumption, "The trial court must presume that a defendant sentenced to eight years or less is an offender for whom incarceration would result in successful rehabilitation . . . ." State v. Byrd, 861 S.W.2d 377, 379-80 (Tenn. Crim. App. 1993); see also Tenn. Code Ann. § 40-35-303(a). As a Range I, standard offender convicted of and sentenced to less than eight (8) years for each of these offenses, the appellant was eligible for probation. See Tenn. Code Ann. § 40-35-102(6); 40-35-303(a); Byrd, 861 S.W.2d at 379-80. However, all offenders who meet the criteria are not entitled to relief; instead, sentencing issues must be determined by the facts and circumstances of each case. See State v. Taylor, 744 S.W.2d 919, 922 (Tenn. Crim. App. 1987) (citing State v. Moss, 727 S.W.2d 229, 235 (Tenn. 1986)). Even if a defendant is presumed to be a favorable candidate for alternative sentencing under Tennessee Code Annotated section 40-35-102(6), the statutory presumption of an alternative sentence may be overcome if

> (A) Confinement is necessary to protect society by restraining a defendant who has a long history of criminal conduct;
> (B) Confinement is necessary to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrence to others likely to commit similar offenses; or
> (C) Measures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant . . . .

Tenn. Code Ann. § 40-35-103(1)(A)-(C). In choosing among possible sentencing alternatives, the trial court should also consider Tennessee Code Annotated section 40-35-103(5), which states, in pertinent part, "[t]he potential or lack of potential for the rehabilitation or treatment of a defendant should be considered in determining the sentence alternative or length of a term to be imposed." Tenn. Code Ann. § 40-35-103(5); State v. Dowdy, 894 S.W.2d 301, 305 (Tenn. Crim. App. 1994). The trial court may consider a defendant's untruthfulness and lack of candor as they relate to the potential for rehabilitation. See State v. Nunley, 22 S.W.3d 282, 289 (Tenn. Crim. App. 1999); see

also State v. Bunch, 646 S.W.2d 158, 160-61 (Tenn. 1983); State v. Zeolia, 928 S.W.2d 457, 463 (Tenn. Crim. App. 1996); State v. Williamson, 919 S.W.2d 69, 84 (Tenn. Crim. App. 1995); Dowdy, 894 S.W.2d at 305-06.

In the case herein, the trial court learned through the appellant's testimony at the sentencing hearing and the pre-sentence report that the appellant had a long history of criminal conduct. The appellant's criminal record contained convictions for contempt of court, three convictions for driving on a revoked license, failure to appear, three convictions for simple possession/casual exchange of a controlled substance, driving with no license, simple assault, criminal trespassing, theft of property between $1,000 and $10,000, evading arrest, two convictions for resisting arrest involving a weapon, driving on a suspended license, disorderly conduct and gambling. The appellant was placed on probation at least six times, and probation violation warrants were sustained on two occasions. Further, the appellant was scheduled to be placed on probation for a different offense a mere two days after this offense occurred. The trial court recognized that the appellant was presumptively eligible for probation or some other form of alternative sentencing, but chose to deny alternative sentencing. We conclude that the record supports the trial court's denial of alternative sentencing.[1]

The appellant also claims that the trial court erred by ordering consecutive sentencing. Consecutive sentences may be imposed in the discretion of the trial court only upon a determination that one or more of the following criteria exist:

(1) The defendant is a professional criminal who has knowingly devoted himself to criminal acts as a major source of livelihood;
(2) The defendant is an offender whose record of criminal activity is extensive;
(3) The defendant is a dangerous mentally abnormal person so declared by a competent psychiatrist who concludes as a result of an investigation prior to sentencing that the defendant's criminal conduct has been characterized by a pattern of repetitive or compulsive behavior with heedless indifference to consequences;
(4) The defendant is a dangerous offender whose behavior indicates little or no regard for human life, and no hesitation about committing a crime in which the risk to human life is high;
(5) The defendant is convicted of two (2) or more statutory offenses involving sexual abuse of a minor with consideration of the aggravating circumstances arising from the relationship between the defendant and victim or victims, the time span of defendant's undetected sexual activity, the nature and scope of the sexual acts and the extent of the residual, physical and mental damage to the victim or victims;

---

[1]We note that in State v. David Lee Bellamy, E2003-02936-CCA-R3-CD, 2004 WL 1936384, at *5 (Tenn. Crim. App. at Knoxville, Aug. 31, 2004), Judge Witt, in a concurring opinion, concluded that Blakely, "may hamper a trial judge's authority to make the fact findings necessary to overcome the statutory presumption of favorable candidacy for alternative sentencing." However, in the case herein, the appellant, despite a Blakely claim on consecutive sentencing, does not raise a claim founded on Blakely to the trial court's denial of an alternative sentence.

(6) The defendant is sentenced for an offense committed while on probation;

(7) The defendant is sentenced for criminal contempt.

Tenn. Code Ann. § 40-35-115(b). The length of the sentence, when consecutive in nature, must be "justly deserved in relation to the seriousness of the offense," Tenn. Code Ann. § 40-35-102(1), and "no greater than that deserved" under the circumstances, Tenn. Code Ann. § 40-35-103(2); State v. Lane, 3 S.W.3d 456 (Tenn. 1999).

In ordering consecutive service of the sentences herein, the trial court in this case stated as follows:

> This Court believes that where there is an argument to be made that the defendant should be considered for consecutive sentencing, that rather than to set a sentence within the range and then determine whether there is consecutive sentencing eligibility or not, and then merely adding one or more convictions together, that the better approach is to first make a determination whether the defendant is eligible for consecutive sentencing; and then if he is, derive a total number of years that serves the ends of the Criminal Sentencing Reform Act of 1989. So the Court looks at the State's argument that the defendant is eligible for consecutive sentencing. And the Court finds that he is, that his record of criminal activity is extensive. As the State points out, the defendant, in a two-year period of time, has had one felony already and 16 misdemeanor convictions.

> The Court places significant - - and I comment the defendant missed a second possibility of being eligible for consecutive sentencing by only two days because the defendant, had he been placed on probation two days earlier, would have been on probation when these offenses occurred. The significance of that is that is goes to the extensiveness of the defendant's criminal conduct.

In our view, the trial court correctly determined that consecutive sentencing was appropriate under Tennessee Code Annotated section 40-35-115(b)(2). The defendant, while only twenty-one years old, has an extensive criminal history. As stated previously, according to the presentence report, he had prior convictions for contempt of court, three convictions for driving on a revoked license, failure to appear, three convictions for simple possession/casual exchange of a controlled substance, driving with no license, simple assault, criminal trespassing, theft of property between $1,000 and $10,000, evading arrest, two convictions for resisting arrest involving a weapon, driving on a suspended license, disorderly conduct, and gambling. The appellant was placed on probation at least six times, and probation violation warrants were sustained on two occasions. Under these circumstances, we determine that consecutive service of the two sentences, as directed by the trial court, is appropriate.

## Conclusion

For the foregoing reasons, we affirm the judgment of the trial court.

_____

JERRY L. SMITH, JUDGE